UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOSES ERVINE,

                       Petitioner,

        – against –

JOSEPH T. SMITH,

                       Respondent.

**OPINION AND ORDER**

15 Civ. 9419 (ER) (SDA)

Ramos, D.J.:

       Petitioner Moses Ervine, *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") on November 24, 2015.  Doc. 1.  The Court referred the Petition to Magistrate Judge Ronald L. Ellis on December 17, 2015.  Doc. 5.  The Petition was then redesignated to Magistrate Judge Stewart D. Aaron on December 4, 2017.

       On November 26, 2019, Judge Aaron issued a Report and Recommendation ("Report" or "R&R") recommending that the Court deny the Petition in its entirety.  Doc. 41.  Ervine received the Report on December 3, 2019, and his written objection to the Report was filed on December 26, 2019.[1]  Doc. 42.  For the reasons stated herein, the Court adopts the Report in its entirety, and the Petition is DENIED.

    **I.**    **BACKGROUND**

       The factual background and procedural history relevant to Ervine's Petition are set forth in detail in the Report.  *See* Doc. 41 at 2–9.

---

[1] Ervine's objection was dated December 13, 2019.  Doc. 42.

According to testimony presented at trial, two eyewitnesses observed Ervine shoot Johans Gonzalez with a pistol. First, as he testified at trial, on May 1, 2006,[2] Juan Acosta saw Ervine shoot Gonzalez in the head, killing him. Just before Ervine shot him, Acosta heard Ervine ask Gonzalez, "[w]here's my fucking money[?]" Doc. 41 at 2. Acosta testified at trial that he had known both men for approximately a year, and he identified Ervine in court as the shooter. *Id.* at 4.

The second eyewitness, Maurilio Lagunas, testified before the grand jury about the shooting. *Id.* at 2–3. Lagunas testified that he also saw Ervine shoot Gonzalez and that immediately after, Ervine told Lagunas that if he were to "say something," the "same thing" would happen. *Id.* at 3. He further testified that later on the same day of the shooting, he saw a man who had been with Ervine at the time of the shooting outside his home, and the man swept his hand in front of his mouth or neck. *Id.* On May 24, 2006, a Bronx County grand jury indicted Ervine on several charges, including murder in the second degree and manslaughter in the first degree. *Id.* at 2.

According to testimony given by two detectives and an Assistant District Attorney at a March 2012 pre-trial *Sirois* hearing[3], Lagunas was deported to Mexico by federal immigration authorities later in 2006, and he did not testify at Ervine's trial. *Id.* at 2–3; *see also* Doc. 40-2. When a member of the police department homicide task force contacted him in Mexico about

---

[2] The Report briefly refers to the shooting as taking place on May 1, 2016, and to the lineup and grand jury proceedings taking place in May 2016. However, the Report as a whole is clear that these events took place in May 2006, not 2016. The Court adopts the Report in its entirety with the only modification as to these dates.

[3] As explained in the Report, under New York law, the court may hold a *Sirois* hearing when a defendant is accused of causing the unavailability of a witness to determine whether the defendant actually did cause such unavailability, and therefore whether un-cross-examined testimony of that witness may be admitted. Doc. 41 at 2. The *Sirois* hearing transcript indicates that one of the detectives who testified, Detective Melendez, testified about Lagunas' immigration history based on an FBI report. Doc. 40-2 at 172.

appearing for the trial, Lagunas told him that he was frightened and would not return to testify in New York.  Docs. 41 at 3, 40-2.

At the *Sirois* hearing, the prosecution introduced Lagunas' grand jury testimony that Ervine threatened him, along with evidence that two weeks after the shooting, Lagunas was abducted by two men who he believed to be associates of Ervine, who threatened him.  Docs. 41 at 3, 40-2.  Following the hearing, the trial court, presided over by Justice Michael A. Gross of the Bronx County Supreme Court, determined that Lagunas was unavailable to testify because of misconduct attributable to Ervine, and therefore the prosecution could introduce Lagunas' grand jury testimony into evidence without his presence at trial.  Docs. 41 at 3–4, 40-2 at 274–76.  Specifically, Justice Gross ruled that Ervine had forfeited his right to confront the witness, because the "evidence [] clearly and convincingly established . . . that [Lagunas'] unavailability [was] a result of the misconduct" of the defendant, as well as acts attributable to the unidentified individuals who abducted Lagunas.  Docs. 41 at 3, 40-2 at 275.

Ervine's jury trial was held in April 2012.  Doc. 41 at 4.  At the conclusion of trial, the jury convicted Ervine of manslaughter in the first degree.  *Id.* at 6.  On May 5, 2012, Justice Gross sentenced Ervine as a second violent felony offender to a determinate term of twenty-four years' imprisonment and five years' post-release supervision.  *Id.*  As relevant to Ervine's enhanced sentence, he had previously been sentenced on October 24, 2003, in Bronx County Supreme Court on two cases stemming from separate charges.  *See* Doc. 42 at 10–15.  Specifically, Ervine was sentenced to a definite term of incarceration of one year (1) on an indictment for attempted robbery as a youthful offender as defined by New York Criminal Procedure Law ("CPL") § 720.10, and (2) on a separate indictment for criminal possession of a weapon.  *See id.*; Doc. 38-6 at 14–17.  Ervine's 2003 conviction for possession of a weapon was

3

the predicate violent felony conviction for which he received an enhanced sentence.  Doc. 38-6 at 16–17.

Ervine, through different appellate counsel, appealed his conviction and sentence to the Appellate Division, First Department, raising three arguments:  that the trial court erred in permitting the state to introduce grand jury testimony of an eyewitness; that the state failed to turn over certain *Brady* material and therefore denied him a fair trial; and that the jury verdict was contrary to the weight of the evidence.  Doc. 41 at 6–7.  The Appellate Division affirmed Ervine's conviction and sentence, finding that "[t]he verdict was based on legally sufficient evidence and . . . not against the weight of the evidence.  There is no basis for disturbing the jury's credibility determinations."  *People v. Ervine*, 981 N.Y.S.2d 526 (N.Y. App. Div. 2014).  Ervine sought leave to appeal the Appellate Division's decision to the Court of Appeals, but that request was denied on August 19, 2014.  *People v. Ervine*, 23 N.Y.3d 1061 (N.Y. 2014).  Ervine's subsequent motion for reconsideration of the Court of Appeals' decision was denied on November 28, 2014.  *People v. Ervine*, 24 N.Y.3d 1043 (N.Y. 2014).

On November 15, 2015, Ervine moved the trial court *pro se* to vacate his conviction pursuant to CPL §§ 440.10 and 440.20 (the "CPL § 440 motion").  Doc. 41 at 7.  Ervine argued that he was "actually innocent," that the conviction was obtained in violation of his rights to due process and effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article 1 § 6 of the New York State Constitution, and that he was wrongfully adjudicated to be a violent predicate offender and given an enhanced sentence due to ineffective assistance of trial counsel.  *Id.*  On March 31, 2017, Justice Gross denied the motion, finding that Ervine had failed to establish that he was actually innocent by clear and convincing evidence and that he had not introduced any newly discovered evidence, and rejecting Ervine's

4

claim that he had been denied effective assistance of counsel. *Id.* at 8; *see also* Doc. 38-6. Justice Gross' decision specifically noted that Ervine had made three arguments regarding ineffective assistance of counsel—that counsel had failed properly to investigate and present alibi or defense witnesses, failed to present DNA results that would have exonerated Ervine, and failed to challenge the felony conviction used as the predicate violent felony offense that enhanced his sentence. Doc. 38-6 at 9–10. As to Ervine's first two arguments, the trial court specifically found that "counsel provided defendant with meaningful representation" and "zealously and competently represented defendant throughout the trial." *Id.* at 11. As to his sentencing argument, the trial court rejected Ervine's claims "on both procedural and substantive grounds," noting that Ervine had failed to challenge his sentence on direct appeal and finding that the court at sentencing properly relied on his 2003 conviction as a predicate felony conviction. *Id.* at 14–16. Accordingly, the trial court denied Ervine's CPL § 440 motion in its entirety. *Id.* at 17.

Meanwhile, as his CPL § 440 motion was pending, on November 24, 2015, Ervine filed the instant Petition, broadly raising four claims: ineffective assistance of counsel, prosecutorial misconduct, violation of his Constitutional right to confrontation, and having been sentenced in violation of New York law. *See* Docs. 1, 41 at 12–22. Judge Ellis stayed this action pending resolution of Ervine's CPL § 440 motion. Doc. 12. After that motion was denied, on August 25, 2017, Ervine informed Judge Ellis that the Appellate Division, First Department had denied his motion seeking leave to appeal and asked that the stay be continued so he could move the Appellate Division for a writ of error *coram nobis*. Doc. 20. Judge Ellis stayed the case pending resolution of that motion. *See id.* The Appellate Division denied Ervine's motion on May 31, 2018. Doc. 26. On March 26, 2019, Associate Judge Michael J. Garcia of the Court of Appeals

denied Ervine's application for leave to appeal the Appellate Division's denial of the writ of error *coram nobis*. Doc. 32. Judge Aaron, to whom the case had been reassigned, then set a briefing schedule for Ervine's Petition on May 31, 2019. Doc. 33.

After the Petition was fully briefed, on November 26, 2019, Judge Aaron submitted his Report to this Court recommending that Ervine's Petition be denied. Doc. 41. Judge Aaron concluded that: (1) the trial court reasonably concluded that Ervine's ineffective assistance of counsel claims were without merit; (2) his claims based on prosecutorial misconduct should be denied, because those claims were either procedurally barred under state law for failure to raise them on direct appeal to the Appellate Division, or had been rejected on the merits by the trial court, or were not exhausted; (3) Ervine's Confrontation Clause claim should be denied; and (4) Ervine's wrongful sentencing claim was not cognizable on federal habeas review. *Id.* at 12–22.

Ervine filed his written objections to the Report in December 2019, and Respondent opposed the objections on March 4, 2022. Docs. 42, 44. Ervine filed a reply to Respondent's opposition on March 25, 2022. Doc. 45. Accordingly, the Report is now properly before this Court.

## II.   STANDARD OF REVIEW

### A. AEDPA Review of the State Court Proceedings

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, habeas petitions under 28 U.S.C. § 2254 may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). This deference is required under the

AEDPA if the petitioner's claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *see Bell v. Miller*, 500 F.3d 149, 154–55 (2d Cir. 2007).

"Th[e] statutory phrase ['clearly established Federal law, as determined by the Supreme Court of the United States,'] refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). In order for a federal court to find that the state court's application of Supreme Court precedent was unreasonable, the decision must be objectively unreasonable rather than simply incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The factual findings made by state courts are presumed to be correct under the AEDPA, and petitioner has the burden to rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Nelson v. Walker*, 121 F.3d 828, 833 n.4 (2d Cir. 1997).

## B. Review of the Magistrate Judge's Report

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) (citations omitted). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses,

7

argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted); *see also Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011) ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error.").

### III.   ERVINE'S OBJECTIONS

Ervine raises four principal objections to the Report, arguing that the Report did not properly consider his ineffective assistance of counsel claims, Confrontation Clause claims, the trial court's rejection of his claim of actual innocence, and his sentence. *See* Doc. 42. Ervine also includes letters sent by his appellate attorney and a transcript of his October 24, 2003 sentencing. *See id.*

#### A.  Ineffective Assistance of Counsel

While Ervine's written objections do not include any details, the Court finds that Judge Aaron correctly concluded that, under the deferential standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), Ervine's ineffective assistance of counsel claim was without merit. In Ervine's reply to Respondent's opposition, he argues that the Report overlooks that the New York Legislature recently amended CPL § 440.10 to exempt ineffective assistance of counsel claims from certain procedural bars under § 440.10(2)(c). *See* Doc. 45; N.Y. Legis. 501 (2021), 2021 Sess. Law News of N.Y. Legis. Memo Ch. 501 (McKINNEY's). As the Appellate Division, Second Department has recognized, "effective October 25, 2021, CPL 440.10(2)(c) does not apply to the issue of ineffective assistance of counsel." *People v. Green,* 160 N.Y.S.3d 108, 111 (N.Y. App. Div. 2022).

The recent amendment to CPL § 440.10 has no bearing on the instant Petition, because both Justice Gross' decision and Judge Aaron's Report considered Ervine's ineffective assistance of counsel claim on the merits. With regard to Ervine's claim based on his counsel's alleged failure to challenge his sentencing, Justice Gross specifically noted, "Defendant's claim is rejected on both procedural *and substantive grounds*." Doc. 38-6 at 15 (emphasis added). Moreover, Judge Aaron considered all of Ervine's ineffective assistance of counsel claims and determined them to be without merit, as the trial court's determinations could not be said to be contrary to, or an unreasonable application of, clearly established federal law. *See* Doc. 41 at 12–16. Accordingly, the Court adopts Judge Aaron's recommendation that Ervine's ineffective assistance of counsel claim be dismissed for the reasons stated in the Report.

### B. Confrontation Clause

Ervine next challenges Judge Aaron's determination that no Confrontation Clause violation occurred, despite the fact that he did not have the opportunity to confront Lagunas, and argues that the state prosecutor admitted "he found nothing linking Petitioner to witness." Doc. 42 at 2. The objection repeats the same argument that Ervine presented in his Petition, and that Judge Aaron considered, namely that Lagunas was deported and not called to the *Sirois* hearing to determine the reason for his absence. Doc. 1 at 8. This objection merely rehashes the arguments already presented to Judge Aaron that the *Sirois* hearing did not establish by clear and convincing evidence that Ervine caused Lagunas' unavailability. It therefore does not merit *de novo* review of the Report. *See Genao*, 2011 WL 924202, at *1 ("In the event a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error."); *see also Jean-Baptiste v. Artus*, No. 09 Civ. 5920 (ER) (PED), 2016 WL 7118280, at *4 (S.D.N.Y. Dec. 6, 2016).

9

The Court therefore carefully reviews the Report as to Ervine's Confrontation Clause claim and finds no error, clear or otherwise. As Judge Aaron found, ample evidence supported the trial court's finding that Ervine caused Lagunas' unavailability through threats or intimidation, and therefore it cannot be said that either the trial court's or the Appellate Division's conclusions were unreasonable determinations or applications of clearly established federal law. Doc. 41 at 20–22. Accordingly, the Court adopts Judge Aaron's recommendation that the claim be dismissed.

### C. Actual Innocence

Next, Ervine argues that Judge Aaron erred in determining that certain of his claims were barred on adequate and independent state procedural grounds prohibiting federal habeas review.[4] Doc. 42 at 2 (citing Doc. 41 at 17). Ervine's objection urges that the trial court misconstrued his CPL § 440 motion, which was based on his claim of actual innocence under 440.10(1)(h), rather than on newly discovered evidence under 440.10(1)(g), and the trial court therefore applied the improper standard of review. To the extent that Ervine claims the trial court misapplied New York law, his claim is not cognizable on federal habeas review, as the Report recognizes. *See Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (quoting *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991))).

Moreover, as stated in the Report, the trial court's decision did in fact apply the actual innocence standard. *See* Doc. 41 at 8 ("[Justice Gross] ruled that Ervine failed to establish that he was actually innocent by clear and convincing evidence[.]"); Doc. 38-6 (citing CPL

---

[4] Judge Aaron's determination that certain of Ervine's claims were barred by state procedural defaults in fact referred to Ervine's prosecutorial misconduct claim based on improper inferences of guilt, rather than the trial court's determination on Ervine's CPL § 440 motion that he had not shown he was actually innocent. Doc. 41 at 17. Ervine's objections do not address his prosecutorial misconduct claim. *See* Doc. 42.

§§ 440.10(1)(h) and 440.10(1)(g)). Any claim that the trial court failed to adequately consider whether Ervine is actually innocent is therefore dismissed.

### D. Sentencing

Ervine argues last that the enhanced sentence he received was in violation of state law. Doc. 42 at 3. He claims, again, that because he was previously adjudicated to be a youthful offender, both of his pre-2012 cases should have been resolved by a youthful offender adjudication, rather than one of them being resolved by a felony conviction; therefore he was not properly convicted of a prior felony, and using his youthful offender adjudication for enhanced sentencing purposes was a violation of CPL § 720.35. *Id.* These arguments repeat Ervine's Petition, s*ee* Doc. 1 at 11, and do not in fact object to Judge Aaron's recommendation that this claim is not cognizable on federal habeas review. Therefore, they do not merit *de novo* review of the Report. *See Genao*, 2011 WL 924202, at *1. In any event, the Court agrees with and adopts Judge Aaron's determination that Ervine's challenge to questions of New York state sentencing law is not cognizable on federal habeas review. *See Saracina*, 452 F. at 46; *Estelle,* 502 U.S. at 67–68. Accordingly, the Court adopts Judge Aaron's recommendation that Ervine's sentencing claim be dismissed.

### IV. CONCLUSION

For the reasons set forth above, the Court adopts Magistrate Judge Aaron's Report in its entirety, and Ervine's Petition for a writ of habeas corpus is DENIED. As Ervine has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this

11

order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to lift the stay, close this case, and mail a copy of this order to Petitioner, along with a copy of Judge Aaron's Report, Doc. 41, which the Court hereby adopts.

It is SO ORDERED.

Dated: April 12, 2022
New York, New York

_____
Edgardo Ramos, U.S.D.J.